**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF NEW YORK**

In re:

JOHN ZAPAS,                                           Case No. 14-72098-reg

                                                      Involuntary chapter 7

                        Alleged debtor.

<u>MEMORANDUM DECISION</u>

(Re: Motion to Dismiss)

Before the Court is a motion by the alleged debtor, John Zapas ("Zapas"), to dismiss this involuntary chapter 7 petition. The involuntary petition originally was filed by Christopher Vardaros, Nick Melissionos, Costas Katsifas, Konstantinos Tsahas ("Judgment Creditors"), four judgment creditors holding a single judgment, and by Hung Far Realty, LLC ("Hung"). The petition was later joined by M. Peter Construction Corp. ("M. Peter") (the Judgment Creditors, Hung and M. Peter are referred to herein as the "Petitioning Creditors"). Zapas argues that he has more than 12 creditors and § 303 of the Bankruptcy Code requires that the petition have been filed by three or more creditors. He argues that: (1) the Petitioning Creditors did not meet this requirement because the Judgment Creditors together constitute a single holder of a claim under § 303(b)(1); (2) because the judgment entered in favor of the Judgment Creditors was due to the malpractice of his state court attorney the claim is subject to a bona fide dispute; (3) Hung's claim is also subject to a bona fide dispute because Zapas's motion for leave to appeal Hung's judgment was pending at the time the involuntary petition was filed; and (4) joining M. Peter

subsequent to the filing of the involuntary petition did not cure the numerosity deficiencies, because M. Peter's state law right of action is barred by the statute of limitations and thus M. Peter is not the "holder of a claim" under § 303(b)(1). Alternatively, Zapas argues the Court should abstain from exercising jurisdiction over this involuntary petition because both Zapas and his creditors will be better served by dismissal. Zapas requests that the Court impose attorney's fees and costs under § 303(i)(1), and sanctions for bad faith pursuant to § 303(i)(2).

The Court finds that the Petitioning Creditors have satisfied the requirements of § 303(b)(1), i.e., that the involuntary petition was filed by "three or more entities, each of which is . . . a holder of a claim . . . that is not contingent as to liability or the subject of a bona fide dispute . . ." and such claims are unsecured in an aggregate amount greater than $15,325. The Court finds that under the plain language of the Code, the Judgment Creditors each are the "holder of a claim" against Zapas based on the pre-petition state court judgment which is, at this time, valid and enforceable.

Zapas's remaining arguments under §§ 303(b) and 305 are unavailing. However, this motion will be adjourned for further consideration of whether the order for relief should enter in this case. Specifically, there remains to be decided whether Zapas is generally not paying his debts as they become due pursuant to § 303(h)(1).

FACTS
I.    *The Involuntary Petition*

On May 6, 2014, Hung and the Judgment Creditors filed an involuntary chapter 7 petition against Zapas pursuant to 11 U.S.C. § 303 (the "Petition"). According to the Petition, the

Judgment Creditors each hold a claim against the Debtor in the amount of $656,683.15, and Hung holds a claim for $460,374 (Petition 2, ECF No. 1).  The Petitioning Creditors allege that Zapas's debts are primarily business debts, an involuntary can be brought against him, and that Zapas is generally not paying his debts as they become due.  (*Id.*)  The Petitioning Creditors filed a statement with the Petition indicating that they are all creditors of Zapas, they hold claims against him that are "liquidated as to amount and noncontingent as to liability… exceed[ing] $1,100,000" in any liens they hold, and that Zapas has fewer than twelve creditors.  (*Id.* at 2-3.) Later, on June 9, 2014, M. Peter joined the Petition.  (Joinder, ECF No. 20.)  M. Peter asserts that it holds a claim against Zapas in the amount of $7,450.  (*Id.*)

II.    *The Petitioning Creditors*

A.  *Vardaros , Melissionos, Katsifas, and Tsahas*

The Judgment Creditors hold a pre-petition state court judgment against Zapas in the amount of $656,683.15.  The judgment resulted from an action that the Judgment Creditors commenced against Zapas to recover money they allegedly gave to Zapas, pursuant to an oral agreement, to purchase real estate to be held in trust for them.  The Judgment Creditors alleged that Zapas purchased the property, but did not make the agreed upon transfer of the property to them.

The Judgment Creditors alleged seven causes of action in the complaint underlying their judgment: (1) to quiet title pursuant to Article 15; (2) to impose constructive trust; (3) to recover damages for unjust enrichment; (4) to recover for breach of contract; (5) to recover for fraud; (6) for declaratory judgment; and (7) to impose and equitable lien.  Zapas moved for summary

judgment on all seven claims, and the state court denied summary judgment on all of them except the claim seeking to quiet title pursuant to Article 15. The court found that there were triable issues of fact remaining and scheduled a trial on liability and damages. However, Zapas failed to appear and defaulted at trial. The state court struck Zapas's answer from the record and awarded a default judgment in favor of the Judgment Creditors. The state court judgment does not apportion the amount of damages that is owed to each Judgment Creditor individually. (*Id.*, Ex. B.) The judgment states as follows:

> IT IS ADJUDGED, that plaintiffs Christopher Vardaros, Nick Melissionos, Costa Kastsifas (sic) and Konstantinos Tsahas…shall recover of defendant John Zapas…$656,683.15 and that plaintiffs Christopher Vardaros, Nick Melissionos, Costas Kastsifas (sic) and Konstantinos Tsahas shall have execution therefore.

Zapas contends that the default was caused by his former attorney, Sean Serpe, because he failed to appear in court. (Zapas Aff. 2, ¶ 6, ECF No. 8.) Serpe has since been suspended from practicing law. (*Id.*, Ex. A) Zapas filed a motion to vacate the default judgment, but it was denied. (*Id.*) Zapas filed an appeal, and lost on appeal. (*Id.*) The appellate court found that despite the allegation of failure of his attorney, Zapas's pattern of willful default and neglect would not be excused. (Decision, *Vardaros v. Zapas*, 105 A.D. 3d 1037, 963 N.Y.S.2d 408 (2013)).

### B. *Hung Far*

Hung holds a pre-petition state court judgment against Zapas in the amount of $460,374 (Zapas Aff., Ex. C, D.) Hung entered into a written contract to purchase real property from Zapas for $2,999,000 in March 2007. (*Id.*) Hung brought an action in state court seeking

specific performance on the contract or return of the $299,000 deposit.  (*Id.*)  A nonjury trial was held and judgment was entered in favor of Zapas on September 12, 2011.  (*Id.*)  Hung appealed, and on July 10, 2013, the judgment was reversed and the appellate court directed that judgment enter in favor of Hung in the amount of $299,000 plus interest from March 17, 2008. (*Id.*)  Zapas filed a motion for leave to appeal the reversal and, despite the pendency of the instant involuntary bankruptcy proceeding, the New York Court of Appeals denied Zapas's motion for leave to appeal on July 1, 2014.  (Petitioning Creditors' Letter, July 7, 2014, ECF No. 26, Ex. A.)

In May 2011, Hung filed another case in Queens County alleging that the same property was fraudulently transferred by Zapas in May 2011 to a third party, Manta Construction.  It appears that that case is still pending.  (Zapas Aff. ¶ 10.)

### C.  *M. Peter*

M. Peter purports to hold a claim against Zapas in the amount of $7,450.  (Joinder of Additional Petitioning Creditor, ECF No. 20.)  Two lawsuits were filed by M. Peter against Zapas in 2009 and 2010 in the New York State Supreme Court, Nassau County.  (Reply, ECF No. 21, Ex. A.)  M. Peter alleged in the 2010 lawsuit that it performed masonry work for and supplied materials to Zapas between April 2008 and June 2008, and that Zapas failed to pay the remaining balance of $7,450.  (*Id*, Ex. B.)  The state court denied entry of default judgment against Zapas. (*Id.*)  Zapas filed a cross motion to dismiss alleging that he was not properly served and, therefore, the court did not have personal jurisdiction over him.  (*Id.*)  After a traverse hearing was held the state court dismissed the 2010 case. (*Id.*)  The 2009 case was also dismissed, without prejudice.  (*Id.*)

III.    _The Motion to Dismiss_

Zapas seeks to dismiss the case on the grounds the Petition does not comply with §

303(b)(1), the case was filed in bad faith, and it is in the best interest of the creditors and the

alleged debtor for the Court to abstain. (Mot. Dismiss ¶ 1-3, ECF No. 7.)   Zapas contends that

the Judgment Creditors count as one petitioning creditor under § 303(b) because they hold one

judgment, and thus one claim, for $656,683.15.   (_Id._ ¶ 3.)  He also contends that the Judgment

Creditors' claim is disputed because the default judgment was entered against him due to the

malpractice of his attorney in the state court proceeding. (Reply ¶¶ 14-16, ECF No. 21.)

Zapas also contends that the money judgment held by Hung for $460,374 is subject to a

bona fide dispute because the decision denying his motion for leave to appeal was entered by the

Court of Appeals after the involuntary petition was filed and is therefore void ab initio because it

was entered in violation of the automatic stay.  (Answer ¶ 2, ECF No. 7,; Zapas's Reply Letter,

July 9, 2014, ECF No. 27.)  Thus, he argues that the appellate court's ruling in favor of Hung is

still subject to appeal and therefore is the subject of a bona fide dispute.  (Reply ¶ 13, ECF No.

21.)

Zapas asserts that the joining of M. Peter did not cure the defective filing because M.

Peter's state court claims were dismissed and any further claims are now time-barred.  (Reply ¶¶

6-9, ECF No. 21.)  Zapas argues that because M. Peter's alleged claim arose from a contract, M.

Peter had six years from the time the claim arose, i.e., six years from April 2008 to assert the

claim.  (_Id._)  Because M. Peter's right of action has been extinguished, Zapas argues, M. Peter no

longer holds a valid claim against him.   Zapas also argues that because the two state court

complaints by M. Peter have been dismissed, the claim is disputed.  (_Id._)

Zapas contends that the Petitioning Creditors filed the involuntary petition in bad faith because the Petition was filed by only one creditor, not three, even though they knew or should have known that Zapas had more than 12 creditors.  The Petitioning Creditors should have known this, he argues, because they had the opportunity to reasonably investigate Zapas's financial circumstances in their pending state court proceedings.  (Mem. Law Supp. 6, ECF No. 11.)  Zapas purports to have at least 32 creditors and indicates that his debts are over $17 million. (*Id.* at 9; Mot. Dismiss, ECF No. 9, Ex. F).

Finally, Zapas also argues that the Court should abstain.  (Mem. Law Supp. 10.)  Zapas contends that the Petitioning Creditors filed the Petition to place pressure on Zapas to pay their state court judgments.  (*Id.*)  Further, Zapas contends that the Petitioning Creditors and the other creditors will realize a de minimis recovery in this bankruptcy because he has few, if any, assets to satisfy his $17 million in debt.  (*Id.*)  Further, Zapas moves for entry of a judgment against the Petitioning Creditors for damages, reasonable attorney fees, and costs pursuant to § 303(i)(1) and (2), if the Court should dismiss the case.  (*Id.* at 12-13.)

The Petitioning Creditors contend that Zapas did not meet his burden of proving bad faith, (Aff. Opp'n ¶¶ 18-19, ECF No. 19.), and that the filing was not in bad faith because the judgments they hold are undisputed and non-contingent.  (*See id.* ¶¶ 5-9.)  The pendency of the motion for leave to appeal the Hung judgment did not make it a disputed claim.  (*See id.* ¶¶ 7-9.) Further, the Petitioning Creditors question the veracity of Zapas's list of creditors and alleged debt.  (*Id.* ¶ 11.)  They contend that the creditors on the list Zapas filed with the Court are personal friends and/or business associates of Zapas's, and that Zapas did not provide all of the information required under Fed. R. Bankr. P. 1003(b).  (*Id.* ¶¶ 14-17, 23-40.)  Finally, the Petitioning Creditors argue that Zapas is not generally paying his debts as they become due

because he admits to having over 32 creditors who are owed a total of over $17 million. (*Id.* ¶¶
20-21.)

The Court held a hearing on June 16, 2014 to consider Zapas's motion to dismiss, and
took the matter under advisement.

DISCUSSION

I. *Requirements under § 303*

Section 303 of the Bankruptcy Code governs involuntary petitions, and it provides, in
part, that:

(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and
only against a person … that may be a debtor under the chapter under which such
case is commenced.

(b) An involuntary case against a person is commenced by filing with the bankruptcy
court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is . . . a holder of a claim against such
person that is not contingent as to liability or the subject of a bona fide dispute
as to liability or amount…if such noncontingent, undisputed claims aggregate
at least $15,325 more than the value of any lien on property of the debtor
securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of
such person and any transferee of a transfer that is voidable under section 544,
545, 547, 548, 549, or 7249a) of this title, by one or more of such holders that
hold in the aggregate at least $15,325 of such claims…

If the involuntary petition is timely controverted, the court shall order relief if "the debtor is
generally not paying such debtor's debts as such debts become due unless such debts are the
subject of a bona fide dispute as to liability or amount." *See* 11 U.S.C. § 303(h)(1).

Zapas and the Petitioning Creditors dispute whether Zapas has fewer than 12 creditors, i.e., whether at least *one* or at least *three* petitioning creditors were required to commence this involuntary case under § 303(b).  The alleged debtor has the burden of raising the issue that it has more than 12 creditors. *In re Euro-Am. Lodging Corp.*, 357 B.R, 700, 714 (Bankr. S.D.N.Y. 2007).  If the alleged debtor provides a list pursuant to the Fed. R. Bankr. P. 1003(b), then the burden shifts to the petitioning creditors to show that the alleged debtor has less than 12 creditors. *Id.*  Zapas asserts that he has over 32 creditors and he filed an amended list of such creditors with their addresses, a brief statement of the nature of their claims, and the amount of the claims as required by Rule 1003(b).  Therefore, the burden shifts to the Petitioning Creditors to show that Zapas has fewer than 12 creditors.  The Petitioning Creditors assert that some of the creditors on Zapas's initial list of creditors are fraudulent entries, and that most of the creditors listed are personal friends and business associates of Zapas.

The Court finds that the Petitioning Creditors have not met their burden of showing that Zapas has fewer than 12 creditors.  The Petitioning Creditors did not specifically identify which creditors it believes were fabricated, nor did they show that if Zapas's list of alleged creditors were reduced in number that the number would be reduced to fewer than 12.  Therefore, § 303(b)(1) applies.  Thus, the Court must determine whether: (1) the Petitioning Creditors are each "holders of a claim" that is not contingent or subject to a bona fide dispute as to liability or amount, and thus satisfy the numerosity requirement; (2) the Petitioning Creditors are undersecured by at least $15,325; and (3) the alleged debtor is generally not paying his debts as they become due.

*A.  M. Peter*

Zapas contends that M. Peter's claim is disputed because M. Peter's state court actions seeking to enforce the claim have been dismissed two times and the claim is barred by the statute of limitation.  A claim must not be the subject of a bona fide dispute as to either liability or amount in order for the petitioning creditor to qualify under § 303(b).  *See* 11 U.S.C. § 303(b); *see also In re Taub*, 439 B.R. 261, 273 (Bankr. E.D.N.Y. 2010).  "The petitioning creditor bears the initial burden of coming forward with evidence to 'establish a prima facie case that no bona fide dispute exists.'" *Id.* (quoting *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111 (2d Cir. 2003)). "Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." *Id.* (quoting *BDC 56 LLC*, 330 F.3d at 118.).  In determining whether the claim is subject to a bona fide dispute, courts ask whether "there is an objective basis for either a factual or legal dispute as to the validity of the debt." *Id.* (quoting *BDC 56 LLC*, 330 F.3d at 117.).  The existence of an affirmative defense may suggest that a bona fide dispute exists*. In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1067 (9th Cir. 2002).  "[T]he court need not resolve any issues of fact or law, it only must determine that such issues exist." *Taub*, 439 B.R. at 273 (quoting *BDC 56 LLC*, 330 F.3d at 118).

In M. Peter's state court complaint, M. Peter alleges that it performed masonry services and supplied materials to Zapas between April 2008 and June 2008.  Zapas argues that by M. Peter's own admission, the claim arose in April 2008 and, is therefore, barred by the statute of limitation.  Under New York law, "an action upon a contractual obligation or liability" is subject to a six-year statute of limitation period.  N.Y.C.P.L.R. 213(2).  The statute of limitation period begins to run on the date final payment becomes due. *Young v. Woodcrest Club*, 188 Misc.2d 706, 729 N.Y.S.2d 855, 857 (N.Y. Sup. Ct. 2001).  The record is not clear as to when the final payment was due under the terms of the agreement.  The Petition was filed on May 6, 2014, and

according to the state court complaint the claim arose in April 2008.  Therefore, it appears that the Petition was filed over six years after the claim arose.  The Petitioning Creditors do not address Zapas's statute of limitations argument, and the Court has no basis upon which to find that the statute of limitations defense asserted by Zapas is not a bona fide dispute.

Therefore, the Court finds that Zapas has sustained his burden of showing that M. Peter's claim is subject to a bona fide dispute, and finds that M. Peter does not qualify as a petitioning creditor under § 303(b).  Without M. Peter, the Court is left to determine whether original petitioning creditors, i.e., the Judgment Creditors and Hung, satisfy the numerosity requirements of § 303(b).

B.  *Vardaros , Melissionos, Katsifas, and Tsahas*

1. *Numerosity*

Zapas argues that the Judgment Creditors hold one claim for $656,683.15 and, therefore, count as one petitioning creditor for purposes of § 303(b)(1).  To determine whether the Judgment Creditors count as one or three petitioning creditors, we begin with the plain language of the statute.  *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) ("where…the statute's language is plain, the sole function of the courts is to enforce it according to its terms.").  To qualify as a petitioning creditor under § 303(b), the petitioning creditors must be "entities" and each petitioning creditor must be a "holder of a claim."  Section 101(15) defines an "entity" as a "person, estate, trust or governmental unit, and the United States Trustee."  A person includes an "individual, partnership, and corporation, but does not include governmental entity."  11 U.S.C. § 101(41). Therefore, since Vardaros, Melissionos, Katsifas, and Tsahas are *individuals*, they qualify as "entities" within the meaning of the Code.

11

A "claim" is defined under the Code as "a right to a payment, whether or not such right is reduced to judgment" or "a right to an equitable remedy for breach of performance if such breach gives rise to a right to a payment." 11 U.S.C. § 101(5). The term "claim" is applied broadly. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 309 (1978); *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478 (2d Cir.), *cert. denied*, 516 U.S. 913 (1995). "The existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to a payment, and (2) whether that right arose before the filing of the petition." *In re Chateaugay Corp.*, 53 F.3d at 497. The "'right to a payment' is nothing more or less than an enforceable obligation." *Id.* (quoting *Pennsylvania Dept. Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). The Court must look to the substantive non-bankruptcy law that gives rise to the debtor's obligations to determine whether a claim exists. *Chateaugay*, 53 F.3d at 497; *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). The question thus becomes whether the Judgment Creditors each have a "right to a payment" under New York law.

The Court finds that the Judgment Creditors each have an enforceable "right to a payment" derived from the $656,683.15 default judgment issued by the state court. The judgment is an enforceable right to payment – a legal claim that has been reduced to judgment. A default judgment is presumptively valid and entitled to enforcement. *Bedford Medical Care, P.C. v. Encompass Ins. Co.*, 915 N.Y.S.2d 452, 455-56 (2011); *see also* N.Y. C.P.L.R. 3215 (permits a party to enforce an unstayed default judgment). A "defendant whose answer is stricken as a result of a default admits all traversable allegations in the complaint, including the basic allegation of liability..." *Rokina Optical Co. v. Camera King, Inc.*, 63 N.Y.2d 728, 730, 469 N.E.2d 518, 519–20, 480 N.Y.S.2d 197, 198–99 (1984). Thus, given the plain language of

the Bankruptcy Code and the enforceability of the default judgment under New York law, the
Judgment Creditors have a "right to a payment," i.e., a "claim," against Zapas.

Zapas asserts that Vardaros, Melissionos, Katsifas, and Tsahas constitute a single
petitioning creditor because they hold one unseparated judgment.  He relies on *In re Atwood*, 124
B.R. 402 (S.D. Ga. 1991), *In re T.P. Herndon & Co.*, 87 B.R. 204 (Bankr. M.D. Fla. 1988), *In re
Ross*, 63 B.R. 951 (Bankr. S.D.N.Y. 1986), and *In re McMeekin*, 16 B.R. 805, *aff'd on reh'g*, 18
B.R. 177 (Bankr. D. Mass. 1982).  However, the Court finds that these cases are either
distinguishable on their facts or unpersuasive.  None of these cases is precedent which is binding
on this Court, and absent such status the Court declines to follow them.

In *T.P. Herndon*, a corporation (the alleged debtor) issued a promissory note to the estate
of one of its deceased stockholders.  *T.P. Herndon*, 87 B.R. 204-205.  The estate assigned
specified interests in the note to the petitioning creditors, who were some of the beneficiaries of
the deceased shareholder's estate.  *Id.*  The court found that because the promissory note was
made payable to a single entity (the decedent's estate), the petitioning creditors held a single
right to a payment, which constitutes one claim under § 303(b) despite there being multiple
beneficiaries of that estate.  *Id.* at 205-206.  Here, the obligation to pay Vardaros, Melissionos,
Katsifas, and Tsahas is derived from a judgment, and there is no basis in the record of this case
to treat them as a single entity as was the case in *T.P. Herndon.*

*McMeekin* involved a judgment arising out of an alleged debtor's obligation to pay a
husband and a wife fixed payments pursuant to a written promissory note.  *McMeekin*, 16 B.R. at
806.  Despite the fact that the underlying obligations had been reduced to judgment, the
*McMeekin* court looked at the underlying promissory note to determine the obligations of the
debtor and the petitioning creditors.  In so doing, the bankruptcy court found that under the

Massachusetts and Florida U.C.C. § 3-116, a promissory note payable to two or more persons is enforceable only by all of them. *Id.* at 807. Given the state law the bankruptcy court concluded that because there was only one right to payment under state law there could only be one claim. *Id.* Further, the *McMeekin* court found that the amount payable to the parties was not divisible because there was no provision providing for a separate payment to each. *Id.* at 809. Therefore, the husband and wife held one claim together. *Id.*

While bankruptcy courts may, under certain circumstances, look beyond pre-petition judgments to determine the nature of the underlying obligation, there is no evidentiary basis for this Court to look behind the Vardaros, Melissionos, Katsifas, and Tsahas judgment.[1]  In fact, neither the Petitioning Creditors nor Zapas argued that this Court should examine the underlying agreement to determine this numerosity issue.  Neither the Petitioning Creditors nor Zapas provided the Court with a written agreement or with a complete record so the Court could discern the nature of the debt or the relationship of the parties.  Further, the documents Zapas did provide did not include any evidence of the obligations of the parties.  The record merely reflects that the parties may have entered into an oral contract for the purchase of real estate and the Judgment Creditors sought money damages for breach of contract, fraud and related equitable remedies.  Indeed, upon denying summary judgment, the state court found that there remained triable issues of fact regarding: whether a corporation, of which the Judgment Creditors were principals, extended a loan to Zapas for services or whether the Judgment Creditors individually gave Zapas money to purchase the real estate, the nature of the relationship between the parties,

---

[1]    *See In re Naemi*, 128 B.R. 273, 278-79 (Bankr. S.D. Ca. 1991) (discussing various contexts in which bankruptcy courts have looked beyond state court judgments, including judgments involving fraud and to determine nondischargeability); *See In re Richard A. Turner, Inc.*, 209 B.R. 177 (Bankr. D. Mass. 1997) (looking beyond prepetition judgments to determine whether creditors hold separate claims for purposes of meeting the requirements under § 303(b)).

and the presence of an oral agreement.  Ultimately, the state court struck Zapas's answer and entered default judgment against him.  Therefore, unlike *McMeekin*, the instant case does not have an evidentiary basis upon which to look beyond the judgment or a record that would establish the existence of a promissory note such that it may be permissible to apply the UCC rules on enforcement of negotiable instruments.

In *Atwood*, two petitioning creditors sued the debtor and non-debtor parties on claims arising from a joint venture arrangement.  *Atwood*, 124 B.R. at 404.  Two of the petitioning creditors held a shared legal claim and one of them had a separate legal claim.  *Id.*  The state court entered a judgment in their favor against the debtor and other defendants jointly and severally, combining the amount of damages assessed for both the legal claims in favor of both petitioning creditors.  *Id.*  In *Atwood*, the bankruptcy court, in a decision affirmed by the district court, found that the petitioning creditors as joint holders of a judgment held one claim between them for purposes of commencing an involuntary petition under § 303(b).  *Id.* at 409.  The bankruptcy court held that because they held the judgment jointly, the judgment only placed one obligation on the debtor to pay both creditors and the creditors only had one "right to a payment."  The bankruptcy court primarily relied on *McMeekin*, reasoning that the petitioning creditors status as "co-holders of a judgment is similar to that of joint-payees on a promissory note." *In re Atwood*, No. 88-41165, 1990 WL 10630830, at * 2 (Bankr. S.D. Ga. Jan. 30, 1990).[2]

Similarly, in *Huszti v. Huszti*, 451 B.R. 717 (E.D. Mi. 2011), the district court affirmed the bankruptcy court's finding that because a judgment was awarded to three petitioning creditors jointly and severally against two joint debtors, the petitioning creditors held one claim.

---

[2] The bankruptcy court also was persuaded by *In re Averil, Inc.*, 33 B.R. 562 (Bankr. S.D. Fla. 1983).  In *Averil*, the court held that allowing co-owners of a single obligation to file an involuntary petition would frustrate the legislative purpose of requiring the joint efforts of at least three creditors.  *Id.* at *3.

*Huszti v. Huszti*, 451 B.R. 717 (E.D. Mi. 2011). The court in *Huszti* reasoned that a judgment is the functional equivalent of a promissory note, making the U.C.C. provision under § 3-116 applicable to money judgments. *Huszti,* 451 B.R. at 721-23. Under U.C.C. § 3-116, promissory notes can only be enforced jointly unless otherwise stated in the agreement.

Both *Atwood* and *Huszti* require an application of state commercial transactions laws to judgments. Both rely on *McMeekin* and reason that a joint judgment is similar to a promissory note payable to joint payees. However, this Court is not prepared to apply the N.Y. U.C.C. to judgments by analogy. Article 3 of the N.Y. U.C.C. is restricted to commercial paper and is designed to protect persons engaged in commercial transactions involving instruments for the payment of money. *See* N.Y. U.C.C. § 3-103; *Malphrus v. Home Sav. Bank of City of Albany*, 254 N.Y.S.2d 980, 983 (1965). Here, the parties' contract apparently was oral, thus there is no underlying negotiable or applicable non-negotiable instrument, and the N.Y. U.C.C. does not apply to court ordered money judgments. Further, while the judgment lists Vardaros, Melissionos, Katsifas, and Tsahas in the conjunctive and did not provide that each would receive separate awards but rather issued an undivided judgment for $656,683.15, nothing under New York law, to the Court's knowledge, prevents each party from enforcing or executing on the judgment without the joinder of the others.[3]

Therefore, the Court finds that Vardaros, Melissionos, Katsifas, and Tsahas each are entities holding a claim, and the original petitioning creditors have met the numerosity requirement under § 303(b).

---

[3] In *Ross*, the bankruptcy court found that two petitioning creditors holding a judgment in their favor jointly constituted a single claim. *Ross*, 63 B.R. at 965. However, the *Ross* court did not provide any reasoned analysis for its decision and thus the Court finds it unpersuasive.

2. *Non-contingent and Undisputed Claims in Aggregate of $15,325 in Unsecured Claims*

Next, we must determine whether the Judgment Creditors had noncontingent and undisputed claims.  Zapas contends that because the default judgment entered in favor of the Judgment Creditors was due to the malpractice of Zapas's attorney in the state court proceeding, the claims of the Judgment Creditors are disputed.  In order to meet the requirements of § 303(b), the claim must not be the "subject of a bona fide dispute as to liability or as to amount."  11 U.S.C. § 303(b)(1).  Further, the enforceability and effect of state court judgments are given full effect in bankruptcy courts.  *In re Amanat*, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005).

The Judgment Creditors have met their burden of showing that their claims are not subject to a bona fide dispute — they provided the Court with an unstayed default judgment in their favor.  Zapas has failed to meet his burden that the Judgment Creditors' claims are subject to a bona fide dispute.  Zapas filed a motion to vacate the state court judgment, which was denied.  Zapas later appealed the denial on the grounds that the default was entered due to malpractice of his attorney Sean Serpe.  *Vardaros v. Zapas*, 105 A.D. 3d 1037, 963 N.Y.S.2d 408 (2013).  Zapas lost on appeal, in part, because the court found that his pattern of willful default and neglect should not be excused, despite his allegations that default was due to the failure of his attorney.  *Id.*  Because the default judgment is still in effect and is enforceable under New York law, the liability of Zapas cannot be disputed.  Further, the amount of the judgment has not been disputed by Zapas.   The claims of the Judgment Creditors are not the subject of a bona fide dispute as to *either* liability or amount.  Finally, the Judgment Creditors' judgment does not appear to be secured in any amount.  They have met the threshold amount for commencing the Petition.

17

Therefore, the Court finds that the Petitioning Creditors have met the requirements of §

303(b)(1) and (2).  Accordingly, the Court need not determine whether Hung holds a claim that

is undisputed and non-contingent because the Judgment Creditors each hold a claim and satisfy

the numerosity requirement.

II.    *Abstention under § 305(a)*

Alternatively, Zapas requests that the Court abstain and dismiss the involuntary case

pursuant to 11 U.S.C. § 305.  Abstention is an extraordinary remedy only appropriate where "the

interests of the creditors and the debtor would be better served by such dismissal."  *See* 11

U.S.C. §305(a)(1); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514,

525 (Bankr. S.D.N.Y. 1996).  The party seeking dismissal bears the burden of demonstrating that

the interests of the debtor and its creditors will both be served by the dismissal.  *In re Monitor*

*Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008).  Courts consider seven factors in

determining whether to dismiss under § 305: (1) the economy and efficiency of administration;

(2) whether another forum is available; (3) whether federal proceedings are necessary; (4)

whether there is an alternate means of achieving an equitable distribution of assets; (5) whether

the debtor and creditors can do an out-of-court work out; (6) whether a non-federal insolvency

proceeding is far advanced; and (7) the purpose for which the bankruptcy jurisdiction has been

sought.  *In re Grigoli*, 151 B.R. 314, 320 (Bankr. E.D.N.Y. 1993); *In re Monitor Single Lift I,*

*Ltd.*, 381 B.R. at 464-65.  "While all factors are considered, not all are given equal weight in

every case."  *Monitor Single Lift I, Ltd.*, 381 B.R. at 465.

Zapas's contention is that the Petitioning Creditors' motivation in filing the involuntary

petition is to obtain "a more rapid collection on their judgments," and that because Zapas has not

exhausted his rights in state court to challenge the respective judgments, the bankruptcy court is not the proper forum to resolve the claims. Zapas contends that Hung has not moved for summary judgment in the state court fraudulent conveyance action. Likewise, the Judgment Creditors have not sought to enforce their judgment since they received it more than three years ago. Further, Zapas asserts that he has over $17 million in debt and does not own any real property; therefore, a chapter 7 liquidation would result in little or no distribution to creditors.

While the Petitioning Creditors assert that they did not file this case in bad faith, they did not articulate their purpose in seeking bankruptcy jurisdiction nor did they address Zapas's motion to abstain. If Zapas's representation of his liabilities is accurate, the involuntary petition was commenced by creditors holding only a fraction of Zapas's alleged debt. On the other hand, Zapas has represented to the Court that he has more than 32 creditors holding over $17 million in claims. The Court cannot find that it is in the best interest of the creditors or the alleged debtor that this case be dismissed under 11 U.S.C. § 305. Creditors would benefit from an orderly liquidation of Zapas's assets, if any, and a distribution on their claims. Zapas would benefit from a bankruptcy discharge if appropriate under 11 U.S.C. § 524. Thus, there is nothing in the record that requires this Court to dismiss and abstain pursuant to § 305(a).

CONCLUSION

For the foregoing reasons, the Court finds that the Judgment Creditors each hold a non-contingent and undisputed claim and, therefore, have met the requirements of § 303(b). The Court still must determine whether an order for relief should enter in this case. Zapas's motion to dismiss will be adjourned to June 1, 2015 at 9:30 a.m. for a pre-hearing conference on the issue of whether Zapas is generally not paying his debts as they become due pursuant to § 303(h)(1). In this regard, the Court will consider the veracity of the list of creditors attached to

Zapas's May 30, 2014 Affidavit [Dkt. #8, Ex. E], and Zapas's claim that "[w]ith the exception of the Petitioning [C]reditors" he generally pays his debts as they come due "or otherwise as agreed with [his] creditors."

The Motion for Abstention is denied.

Dated:      Central Islip, New York
            May 1, 2015                                   **_/s/ Robert E. Grossman_**
                                                          Hon. Robert E. Grossman
                                                          United States Bankruptcy Judge